```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/12/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC SANABRIA,

                Plaintiff,

-against-

DETECTIVE SHAWN TEZLOF, et al.,

                Defendants.

11-CV-6578 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Eric Sanabria ("Plaintiff") brings this action under 42 U.S.C. § 1983 for claims of excessive force and illegal seizure in violation of his Fourth Amendment rights, as well as claims for failure to intervene to prevent the use of excessive force and denial of medical care in violation of his Fifth Amendment rights.[1] Plaintiff initially brought this action *pro se* naming as defendants "Warwick Police Department; Chester Police Department; [and] State Police Trooper F?" pursuant to a complaint filed September 7, 2011. (ECF No. 1) On December 30, 2011, the Court dismissed the claims against the Warwick Police Department and Chester Police Department, directed the Clerk to add as defendants the Town of Warwick, the Town of Chester, Detective Tezlof, Detective Hommein, and John Does 1-25, and directed the Towns of Warwick and Chester to assist Plaintiff in identifying John Does 1-25. On May 17, 2013, Plaintiff filed an Amended Complaint dropping the Town of Chester and Detective Hommein as defendants, keeping Tezlof and the Town of Warwick as defendants, and adding as defendants Fredrick M.

---

[1] In his papers in opposition to the current motion, Plaintiff additionally asserts an equal protection claim, "stem[ming] from the fact that even during an unlawful arrest, plaintiff should have been treated accordingly to the law and established police procedure, as any individual in the same circumstances." (Plaintiff's Opposition to the Motion to Dismiss, ECF No. 66, at 2.) While Plaintiff uses the term "equal protection," this is not a cognizable equal protection claim as Plaintiff has not alleged he was treated differently from any class of persons or similarly situated individuals.

Copies mailed/faxed on 8/12/2016
Chambers of Nelson S. Román, U.S.D.J.

Hoffmen, Christopher Blackwell, John Radar, Alton Morley, Brian Luthan, Kevin Terry, Felix Oresto, Kevin Harsey, Jason March, Micheal Mooney, Micheal Kearse, and J. Feragola (together with Tezlof, "Individual Defendants") (collectively, including Town of Warwick, "Defendants").[2]

Before the Court is the Defendants' motion to dismiss.[3] For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and Motion for Leave to Amend the Complaint. Where warranted, the Court considers additional facts provided in Plaintiff's original complaint, because Plaintiff did not re-plead the entirety of facts put forth in his original complaint. *Farbstein v. Hicksville Pub. Library*, No. CV 02-6438 DRH/MLO, 2006 WL 288251, at *1 (E.D.N.Y. Feb. 6, 2006), aff'd, 254 F. App'x 50 (2d Cir. 2007) (considering allegations in both the original and amended complaints because plaintiff was *pro se*).

On March 25, 2010, at approximately 10:30 P.M. in the town of Warwick, NY, Plaintiff was in a taxi cab driven by Plaintiff's friend when he was pulled over by approximately 20 to 25 police officers. (Compl., ECF No. 1, at 3; Amended Compl., ECF No. 34, ¶ 1(a).) The officers, with guns pointed at the vehicle, asked the driver to step out of the vehicle. Detective Shawn

---

[2] In its order of service dated March 4, 2015, the Court mistakenly determined the Town of Warwick was dropped as a defendant, because Plaintiff removed the Town of Warwick from the caption in his Amended Complaint. However, Plaintiff maintained allegations concerning the Town of Warwick, and, as a result, the claims against the Town of Warwick stand. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (the court should read the complaint "to raise the strongest arguments [it] suggests."). As a result, the Town of Warwick was not properly served, but defense counsel entered an appearance for the Town of Warwick and made arguments in the motion to dismiss on its behalf. The Court will therefore consider the arguments, and because the Court determines Plaintiff's claims against the Town of Warwick must be dismissed, there is no issue of service or lack of notice.

[3] The Court notes that Defendants did not properly submit a motion to this Court. Local Civil Rule 5.2 of the United States District Courts for the Southern and Eastern Districts of New York directs the parties to "follow the instructions regarding Electronic Case Filing (ECF) published on the website of each respective Court." Local Rule 5.2(a). Pursuant to this Court's rules, all "Motion papers shall be filed via ECF." Individual Practices in Civil Cases, Judge Nelson S. Román, Rule 3(c), *available at*
http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=826. Defendants did not file a notice of motion or motion papers electronically, which resulted in significant delay for the Plaintiff in this case.

Tezlof, Sergeants John Rader and Alton Morely, and Officers Brian Luthan, Kevin Terry, Felix Oresto, Kevin Harsey, Jason Marsh, Michael Mooney, Michael Kearse, and J. Feragola all forced Plaintiff out of the car, pulled him to the ground, handcuffed him tightly, and struck his knee. (Amended Compl., ¶ 1(a).) The officers additionally stepped on Plaintiff's hands and back so that he could not move. (Compl. at 3.) Sergeants Christopher Blackwell, Rader, and Morely, and Detectives Hoffman and Tezlof witnessed these events but did not prevent or stop the officers' actions. (Amended Compl. ¶ 1(b).) Plaintiff was then arrested and brought to the Town of Warwick police station. (Compl. at 3).

Prior to the events of March 25, Plaintiff had been seeing an orthopedist and had plans to undergo a knee replacement surgery. (*Id.*) At the jail, Plaintiff was given minimal medical treatment, including pain medication (naproxen) and a knee brace. (*Id.*) Since the incident, Plaintiff's knee fills up with fluid all of the time and causes difficulty walking. (*Id.*)

## DISCUSSION

### I. *Statute of Limitations*

Section 1983 claims are subject to a three-year statute of limitations in New York. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Plaintiff's Amended Complaint was filed on May 17, 2013, more than three years after the alleged incident. The claims in Plaintiff's Amended Complaint, however, will be deemed timely to the extent they relate back to the original complaint. Specifically, in order to bring claims against the John Doe officers once their identities are discovered, the amended complaint must "relate back" to the original complaint pursuant to Federal Rule of Civil Procedure 15(c). Fed. R. Civ. P. 15(c). However, Federal Rule of Civil Procedure 15(c)(1)(C), which provides one avenue for relation back, "preclude[s] relation back

3

for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517 (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)). *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) ("As the amended complaint adding the individual police officers does not relate back to the complaint naming the 'John Doe' officers, the claims brought against those officers are untimely."). Therefore, any claim against a John Doe officer newly named in the Amended Complaint cannot relate back to the original complaint under Rule 15(c)(1)(C).[4]

Federal Rule of Civil Procedure 15(c)(1)(A), alternatively, permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Under CPLR § 1024, a complaint relates back where: (1) the plaintiff "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) the plaintiff "describe[d] the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan*, 738 F.3d at 519 (internal quotations and citations omitted). To meet the first requirement, a plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired." *Strada v. City of New York*, No. 11-CV-5735 MKB, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (quoting *Justin v. Orshan*, 14 A.D.3d 492, 492–93, 788 N.Y.S.2d 407 (2d Dep't 2005)) (quotation marks omitted). "These efforts might include, inter alia, serving discovery demands on any known parties or seeking disclosures pursuant to a Freedom of Information Law request."

---

[4] The New York CPLR § 203 "requirement closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)," and thus, Plaintiff "fails to satisfy the state's corollary to that rule, as well." *Id.*; *see also Buran v. Coupal*, 87 N.Y.2d 173, 179, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995) (noting that § 203 was largely modeled after Rule 15(c) of the Federal Rules of Civil Procedure).

4

*Bender v. City of New York*, No. 14 CIV. 4386 LTS GWG, 2015 WL 524283, at *5 (S.D.N.Y. Feb. 10, 2015) (internal citations omitted).

In the instant case, Plaintiff has met the first requirement of § 1024 as he exercised due diligence to identify the John Doe defendants. Plaintiff contends that "a record of correspondence between petitioner and the court, requesting additional information, [exists and] demonstrates due diligence on" his part. (Plaintiff's Opposition to the Motion to Dismiss, ECF No. 66, at 1.) As evidenced by the docket in this case, Plaintiff attempted to amend his complaint multiple times, and each time the amendment was denied for procedural or other deficiencies. (*See* ECF Nos. 17, 23, 25, 32, 34.) The amended complaints Plaintiff attempted to file on May 3 and 4, 2012, contained detailed descriptions of the events and identified the John Doe police officers by name. (ECF Nos. 17, 25.) Therefore, it cannot be said that Plaintiff did not exercise due diligence in identifying the defendants prior to the expiration of the statute of limitations where he in fact did attempt to file amended complaints that identified the defendants before the statute of limitations expired. Accordingly, Plaintiff has met the first *Hogan* requirement for relation back.[5]

To meet the second requirement, a complaint is "sufficient only if the actual defendants are adequately described and would have known, from the description in the complaint, that they were the intended defendants." *Lebowitz v. Fieldston Travel Bureau, Inc.*, 181 A.D.2d 481, 482

---

[5] As previously explained in this district, "all *pro se* litigants are required to submit their complaints to the Pro Se Clerk, [who] reviews all complaints for form and substance []." *Simpson v. Bank of New York*, No. 81 CIV. 0407 (CBM), 1981 WL 245, at *1 (S.D.N.Y. Aug. 26, 1981) (internal citations omitted). The Pro Se Clerk determined Plaintiff's submissions were unclear or procedurally confusing for reasons unrelated to the identification of John Doe defendants. (*See* ECF No. 17 at 1; ECF No. 25 at 1.) Providing *pro se* Plaintiff with the necessary leniency in light of his attempts to name the defendants, Plaintiff should not be punished for his failed attempts to amend his complaint clearly and correctly when such attempts were (albeit, correctly) "bounced" by the Pro Se Clerk.

(1992) (internal citations and quotation marks omitted). A complaint can satisfy this requirement with details such as "the date, time, and location of the alleged incident," or "substantial detail concerning the appearance" of the alleged defendants. *Hogan*, 738 F.3d at 519. Plaintiff has additionally met this second requirement. His complaint describes with particularity the date, time, and location of the arrest. In addition, the original complaint names defendants Tezlof and Hoffmen.[6] (Compl. at 3.) "Although Plaintiff did not describe the Defendants in detail, a simple review of the arrest paperwork would have revealed the [officers involved], who undoubtedly knew [the identity of the other officers on scene]. This level of detail is sufficient to have informed [the] John Doe officer[s] that they were the intended Defendants." *Heinz-Wright v. City of New York*, No. 15 CIV. 3269 RRM VMS, 2016 WL 3627323, at *4 (E.D.N.Y. June 3, 2016), *report and recommendation adopted sub nom. Heinz-Wright v. New York*, No. 15CV3269RRMVMS, 2016 WL 3620759 (E.D.N.Y. June 29, 2016). Finally, as explained above, defendants were identified in ECF submissions (i.e., rejected amended complaints) as of May 2012—well within the statute of limitations. Therefore, it cannot be said that had the John Doe defendants read the complaint, they still would not have been apprised that they were the intended parties, and Plaintiff has met both *Hogan* requirements for relation back pursuant to § 1024. As a result, the Amended Complaint relates back to the original complaint and is deemed timely.

## II.    *Fourth Amendment Seizure/False Arrest*

"[T]he warrantless arrest of a person is a species of seizure required by the [Fourth] Amendment to be reasonable." *Payton v. New York*, 445 U.S. 573, 585 (1980). The § 1983 claim

---

[6] Plaintiff spelled defendant Hoffmen's name incorrectly as Hommein in the original complaint. However, in later submissions, Plaintiff refers to the defendant as "Detective Hoffmen/Hommein?" (ECF No. 17 at 2.) This clearly indicates that Plaintiff was merely mistaken about the correct spelling of defendant Hoffmen's name.

6

resting on the Fourth Amendment and resulting from unlawful seizure is false imprisonment. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.").

Defendants argue that, pursuant to the Supreme Court's holding in *Heck v. Humphrey*, because Plaintiff was later convicted on criminal charges, Plaintiff may not recover damages for an unlawful seizure unless his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 487 (1994). However, the holding in *Heck* is explicitly limited to civil suits that would undermine or imply the invalidity of the conviction of the Plaintiff. *Id.* The Second Circuit has made clear that a § 1983 false arrest action only undermines the integrity of criminal proceedings when the prosecution's "only evidence for conviction was obtained pursuant to an arrest." *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) ("[I]n a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."). However, where there exists "independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest," the civil claim would not undermine the proceeding and therefore is not barred by *Heck*. *Id.*

In the instant case, the Court is unable to determine whether success on Plaintiff's § 1983 claim would "necessarily imply the invalidity" of Plaintiff's conviction for burglary and possession of a weapon, because the Court has no information as to the nature and extent of the

7

evidence that was available and presented against Plaintiff in the criminal proceedings. *Covington,* 171 F.3d at 123; *see also McCord v. City of New York,* No. 13 CIV. 2008 AJN, 2014 WL 2567108, at *3 (S.D.N.Y. June 6, 2014) ("The Court is not equipped to conduct such an analysis in this procedural posture because the parties have provided no basis from which to assess whether any seized evidence or self-incriminating statements were 'essential' to the prosecution's case."). As a result, the Court cannot rule at this stage of the litigation that Plaintiff's civil claims arising from his arrest are barred by *Heck.*

### III. Excessive Force

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Carpenter v. City of New York,* 984 F.Supp.2d 255, 267 (S.D.N.Y. 2013) (quoting *Papineau v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006)). Granting "a motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." *Messina v. Mazzeo,* 854 F. Supp. 116, 128-29 (E.D.N.Y. 1994) (citing *Roundtree v. City of New York,* 778 F.Supp. 614 (E.D.N.Y. 1991)). "In determining whether the force used in a given arrest is reasonable, courts pay careful attention to the facts and circumstances of each case, including (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee." *Gersbacher v. City of New York,* 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989); *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)).

Defendants contend that Plaintiff "has failed to allege action by [the Individual Defendants] that would subject them to liability." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(e).) Accepting Plaintiff's allegations as true for purposes of this motion, the Court cannot conclude that it was objectively reasonable for Defendants to step on Plaintiff's hands and back and strike his knee once Plaintiff was on the ground. (Amended Compl., ¶ 1(a); Compl. at 3.) Additionally, it is not apparent from the pleadings that Plaintiff posed any threat to the officers' safety or that he was resisting arrest. Evidence uncovered during discovery may ultimately prove that Defendants' actions were objectively reasonable, to the extent they occurred as alleged by Plaintiff, but such a determination is best resolved on a motion for summary judgment or at trial. *See, e.g., Landy v. Irizarry*, 884 F. Supp. 788 (S.D.N.Y. 1995) (dismissing plaintiff's excessive force claim on a motion for summary judgment following the Court's review of the evidence, not on a motion to dismiss.)

Moreover, though Plaintiff has failed to allege with particularity which defendant specifically engaged in striking his knee and stepping on his back, he has alleged which defendants were involved in the incident. At this stage, before Plaintiff has had access to discovery, the Court cannot insist that Plaintiff identify which officer specifically engaged in which part of the excessive force incident. Accordingly, Defendants' motion to dismiss Plaintiff's excessive force claim arising from his arrest is denied.[7]

---

[7] It should be noted that Defendants do not explicitly make an argument that Plaintiff's excessive force claim was not adequately plead. Instead, Defendants argue that the Court "must analyze the specific actions of an individual official when addressing the qualified immunity defense" and that Plaintiff "has failed to allege action by [the Individual Defendants] that would subject them to liability." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(e).) It is unclear what specifically Defendants intended to argue with regards to the sufficiency of the allegations, but the analysis in this section as well as the qualified immunity section fully address any argument that could have been made by Defendants.

9

*IV.   Failure to Intervene*

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach where an officer fails to intervene, but observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official. *Id.* For an officer to be held liable, he or she must have had a realistic opportunity to intervene to prevent the violation from happening. *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)); *accord Russo v. DeMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012). However, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015) (citing *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *8 (S.D.N.Y. Jan. 16, 2014)).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). With respect to a claim of failure to intervene, an officer is personally involved in the alleged constitutional deprivation if he was present when it occurred, "yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Russo v. DeMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. *Simon v. City of New York*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's claim as futile for failure to intervene "because these same officers actually arrested

10

her.") (citing *Morgan v. County of Nassau*, No. 09 Cv. 4168 (ADS)(AKT), 2010 WL 2634125, at *9 (E.D.N.Y. July 1, 2010)) *report and recommendation adopted*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011).

Defendants argue that "there has been no evidence adduced to suggest, let alone establish, that any officer knew of a constitutional violation, had an opportunity to prevent a violation, and failed to do so." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(c).) However, at the motion to dismiss stage, Plaintiff need not present evidence in order for his claims to survive. Plaintiff must simply plead facts from which the Court could conclude, if accepted as true, that a violation has occurred. Plaintiff has alleged that Defendants witnessed the beating of Plaintiff and failed to intervene. Having already held that Plaintiff adequately pleaded a constitutional violation of excessive force and the presence of additional defendants during his arrest, his failure to intervene claim additionally must stand. *See Gersbacher*, 134 F. Supp. 3d at 725 ("The failure to intervene claim is straightforward: because [plaintiff] has adequately pleaded underlying constitutional violations and the presence of multiple NYPD officers during his arrest he may move forward to discovery."). The Court notes, however, that Plaintiff names a number of officers that participated in the arrest and beating as well as failed to intervene. If the officer was a direct participant in the excessive force violation, the failure to intervene theory will be inapplicable. *See Simon*, 2011 WL 317975, at *12. The determination of who was specifically involved in the beating will be left to discovery.

V. *Denial of Medical Care*

Plaintiff's cause of action for denial of medical care is brought pursuant to 42 U.S.C. § 1983 and relates to the Defendants' alleged denial of medical care during the time that Plaintiff was held at the Town of Warwick police station. Although the Eighth Amendment bar to cruel

and unusual punishment does not apply to Plaintiff because he was not a prisoner but was simply being held at the police station, the denial of medical care claim arises under the Due Process Clause of the Fifth Amendment instead, and as a result, the same deliberate indifference test applies. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (holding that denial of medical care subsequent to an arrest is analyzed under the Due Process Clause because the arrestee was a "pretrial detainee, not a person who had been convicted, and hence the Eighth Amendment did not apply").

To sustain a claim of deliberate indifference, Plaintiff must allege that (1) objectively, the deprivation of adequate medical care was sufficiently serious, and (2) subjectively, defendants acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Salahuddin v. Goord*, 467 F.3d 263, 279-81 (2d Cir. 2006). "The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). For the subjective prong, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind." *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—"an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." *Hill*, 657 F.3d at 123 (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (observing that "negligent malpractice

do[es] not state a claim of deliberate indifference"). In the instant case, it cannot be said that Plaintiff experienced deliberate indifference to his medical needs. Though Plaintiff's injury may have caused extreme pain, there is no allegation that an official knew of and disregarded a serious risk to Plaintiff's health. Specifically, while at the police station, Plaintiff was provided with a knee brace and pain medication. Therefore, Plaintiff was provided with at least some treatment, and, at most, the treatment was negligent. However, even if negligent, the treatment does not rise to a level of deliberate indifference.

Moreover, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citation and internal quotation marks omitted). Plaintiff has not alleged that any officer or defendant, in particular, refused to provide him with medical care. Without knowing what, if any, part each defendant played in providing or not providing medical care to Plaintiff, it is impossible for this Court to draw an inference that the Defendants could be liable for the alleged conduct. Because Plaintiff has not alleged personal involvement of any defendant, the denial of medical care claims must be dismissed. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("[A] plaintiff must allege that the individual defendant was personally involved in the constitutional violation").

### VI. *Qualified Immunity*

Defendants assert qualified immunity as a defense to all of Plaintiff's claims. Plaintiff's only remaining claims against the Individual Defendants are false arrest, excessive force, and failure to intervene. It is well established that qualified immunity may operate as a defense to false arrest and excessive force claims. *See Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d

756, 761 (2d Cir. 2003); *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995). Additionally, a police officer is not entitled to qualified immunity if his failure to intervene "permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known" and "the failure to intercede [occurred] ..... under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Riciutti v. New York City Transit Authority*, 941 F.2d 119,129 (2d Cir. 1991).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19. It is within the Court's discretion to determine the order in which the two prongs are analyzed. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Having already decided that Plaintiff sufficiently alleges claims of false arrest, excessive force, and failure to intervene, the Court turns to the second prong of the test. There is no question that the rights at issue in this case—to be free from false arrest and excessive force and for an officer to intervene when witnessing a violation of constitutional rights—were clearly established at the time of the incident. *See Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995) (collecting cases regarding false arrest and excessive force); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by

14

other law enforcement officers in their presence."). Thus, because Plaintiff sufficiently alleges claims of false arrest, excessive force, and failure to intervene and because the law is clearly established with regards to each of those rights, Defendants' request for qualified immunity is denied.

However, this is not to say that a defense of qualified immunity would necessarily fail at the summary judgment stage. In the case where Defendants are alleged to have violated clearly established rights, "the question of qualified immunity ... turns on whether the actions of [the officers] were objectively reasonable under the circumstances." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996), *amended* (May 21, 1996).

### VII. Monell *Claim against Town of Warwick*

Finally, Plaintiff asserts that the Town of Warwick is liable for the constitutional violations because "it was the policy and/or custom of the Town of Warwick to inadequately supervise and train its police officers." (Amended Compl. ¶ 10.) A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell*, 436 U.S. at 694. Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F.

Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York*, 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

Here, the complaint lacks sufficient factual details concerning *Monell* liability and contains boilerplate allegations of unconstitutional policies and practices. Specifically, Plaintiff's *Monell* claim is based on one conclusory allegation that "it was the policy and/or custom of the Town of Warwick to inadequately supervise and train its police officers." (*See* Amended Compl. ¶ 10.) As a mere recitation of failure to train is not enough to sustain a *Monell* claim, Plaintiff's claim fails.

Moreover, Plaintiff's claim relates only to a single incident. Although a plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sams v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (internal citations and quotation marks omitted). Plaintiff has not alleged any incidents of excessive force or false arrest involving the Town of Warwick Police Department prior to March 25, 2010. (*Id.*) As a result, the complaint lacks sufficient factual

details concerning *Monell* liability. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases that dismiss *Monell* claim where the only factual assertions in complaint were conclusory and constituted a boilerplate recitation of the elements of a *Monell* claim). Without any further factual allegations to support the existence of an unconstitutional municipal policy, Plaintiff's *Monell* claim against the Town of Warwick fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part. Plaintiff's claims for false arrest, excessive force, and failure to intervene remain; the claim for denial of medical care and all of Plaintiff's claims against the Town of Warwick are dismissed. The Individual Defendants are directed to file an answer to the Complaint within 30 days of the date of this Order. The parties are directed to appear for an initial pre-trial conference on September 22, 2016 at 12:00 p.m. The parties are further directed to complete and bring a completed case management plan to the conference.

SO ORDERED.

Dated: August 12, 2016
       White Plains, New York

NELSON S. ROMÁN
United States District Judge